Alma dot 2-18-0325 Maddie Stanley, Ronald Elderman, and Joseph Harris, Puntus Appelidis Joseph Bostedt and Ava Bostedt, Defendants' Appellants Arlington, on behalf of the Defendants' Appellants, Mr. Patrick M. Griffiths Washington, on behalf of the Puntus Appelidis, Mr. Jeffrey A. Meyer Mr. Griffiths, if you are ready, you may proceed. Good morning. May it please the Court, Counsel. My name is Patrick and I represent the Defendants, Joseph and Ava Bostedt. Joseph and Ava Bostedt are residents, as the Court is aware by now, of the Williamsburg-Greene subdivision, which is located in unincorporated Elgin, Kane County, Illinois. The Bostedts seek one of two forms of relief of appeal. First, and preferably, we ask that the Court reverse the trial court's order granting the adjunct a relief and requiring the complete removal of the Bostedt's detached garage. Second, alternatively, if the Court is not inclined to grant the outright reversal, we ask that the Court reverse in part and remain with instructions to allow compliance with the declaration by some other means rather than complete removal, such as attachment. As the Court is aware, the salient background facts are as follows. Williamsburg-Greene subdivision consists of four separately planted units, which were planted and developed over roughly 12 years from about 1978 to 1990. And Units 3 and 4 each contained substantially similar declarations with various restrictions. As well, Units 3 and 4 also initially maintained a homeowner's association to help administer the subdivision, including for matters with respect to the restrictions contained in the declaration. But those associations were both allowed to be dissolved for both units in 2002, roughly 17 years ago. Since that time, there has been no association for any of the units. So no association, no committee? No association, no trustee, no committee. The Bostedts purchased their home in 2014 at a time, again, when no association or committee existed to administer the provisions of that declaration. In February of 2017, they obtained bids to construct a detached garage, and then they applied to the only authority that they knew of, which was Kane County. They applied to Kane County, obtained a permit to construct the garage pursuant to the Kane County rule. You said that's the only one that they were aware of? Yes. Now, they clearly had constructive notice of the declaration. No question they had constructive notice of the declaration, but also even had they had actual knowledge of the declaration, they had no knowledge of any body to Did they make any inquiry to find out if there was a body? I'm not positive this is part of the record. I think it might be. But, yeah, the lawyer who represented them in the original closing advised them that there was no association, and therefore, there was nothing he needed to do within the association to obtain approval. So from there, they went to the county. The county reviewed the application, granted the permit, and in early April, the Bostedts commenced construction of their garage. There was excavation, constructing the walls, constructing the roof, and they continued construction until about May of 2017 when this case was commenced. If I understand this particular subdivision or this area, one of the goals is to keep it open, so other than natural landscaping, we don't have any fencing, nothing that would prevent anyone from seeing this excavation going forward or this building going forward. I would agree that where the excavation occurred was open and notorious from the street. Anybody driving by could see it happening. And, in fact, there was testimony at the trial court from people such as the neighbor across the street that she, in fact, did notice that this was happening. When they did notice that that was happening, they at first waited a couple weeks to do anything, and then after a little discussion amongst a group of the three plaintiffs and others, they elected to send an anonymous letter to the defendants, which they received sometime, I want to say, the first week of May, I want to say May 5th. So almost a month passed between the time that they commenced construction and the time they got any evidence of anything saying, hey, we don't want this, and even then it was anonymous, so there was nobody that they could go to to see what the problem was. I want to kind of drill down on the issues, the legal issues that are before us. The first of which is, you know, we believe the trial court incorrectly interpreted and, in fact, modified the declaration to provide essentially a blanket prohibition on all structures and outbuildings without exception. Go ahead. The restrictions covenants are certainly part of the process, and shouldn't we or a court or anyone reviewing it try to make sense out of the whole document rather than, well, I like this one, I'm not sure this one works, I don't like this one, isn't that the way it should be done?  As we point out in our brief and as I'd like to point out here, maybe I can just tackle those particular, I'll fast forward to those particular restrictions. Paragraph one, there are basically five restrictions that we hit on in the trial court in our briefs, but really three of them are really most important and I think go to the heart of the matter. Paragraphs one, three, and eight of the declaration. Paragraph one is the prohibition, which I'll paraphrase, basically says, no structures of any kind other than a home with an attached garage with a paved driveway. Paragraph three says, no building, fence, swimming pool, or other structure until you've got approved plans from the trustee or committee. And then paragraph eight says, no outbuilding or any structure of any kind whatsoever. And by the way, if you do build something, any structure or other outbuilding, that's negatively impacting, that destroys the character and plan viewed or that's envisioned by the declaration. So if you take those individually and you look at paragraph one, if you read paragraph one in isolation, you can read that and say, okay, paragraph one permits only a house with an attached garage and a paved driveway and nothing else. But I think we know that's not the intent. If you read the whole document, that's not the intent because you have paragraph three that says, hey, you can do any of these other things, pools, fences, and other structures, as long as you have advanced written approval. Same thing with paragraph eight. Paragraph eight says, you know, nothing at all. It doesn't say unless it's approved, it just says you can't build these things. And if you do, that's impacting negatively the character and plan of the subdivision. So in isolation you couldn't do anything. But again, we know that's not the case because paragraph one specifically allows a house and a garage and paragraph three allows these other items as long as they're approved. So how do we harmonize them? I think we have to harmonize it by reading the entire document. And when you have a subdivision which has a provision such as paragraph three, which says you can do, you can't do any of these things, buildings, fences, swimming pools, or other structures, unless you get approval. And then you actually look at the community. And as we pointed out, there are countless examples of buildings, fences, pools, and other structures. I think you have to read the document to say those things are permitted as long as you get approval. The problem here is there was no immediate mechanism to get approval, at least as set forth in the declaration. Well, don't you also find a lot of violations to that policy that seemed to have been built without approval? So I think that's an interesting question because on the one hand, I don't think there's any question that those are potentially permissible items if you're able to get approval. But I think the facts show that many of these things, if not most of them, have been constructed certainly more recently than 17 years ago when the association ceased to exist. And so if they were otherwise permittable but they were just done without approval, and if that is deemed a violation, then our view is, and we point out, those are waivers. Those are waivers of that provision. We actually think that they are potentially permissible. And the question becomes, well, how do you permit something without an association? Our view is, well, you go to the next level of authority that governs that area. You have no association, but you do have a county government. You have a county zoning ordinance. You have an ordinance that tells you, similar to a declaration, what you can build, how you can build it, what the size limitations are, what the setback limitations are. And that's what the BOSTEDS did. They went to that permissibility. But there's really no issue in this case, is there, with the fact that the county here, the county of Kane, gave appropriate or gave permission within their obligation to manage the zoning of the area. That's not really called to question, is it? I agree. Okay. There's no question they applied, received a permit, and built the structure. And within whatever zoning district they're in, they are doing what is either allowed as right or specially permitted. Correct. And so, kind of getting back to the trial court's decision, I think the real problem we have is, first of all, reading the document, as we've just discussed, the cases, the Amico case, the Pasulta case, and the others that we've cited, establish basically three things. First of all, they have to be interpreted to give effect to the actual intent of the parties, as determined from the whole document. Not one paragraph, not one sentence, but the whole document. Number two, you have to, to the extent there's an ambiguity, you have to resolve that ambiguity in favor of an otherwise legitimate permitted use. And number three, where there is ambiguity and it's not clear and definite, you can't enforce that restriction. And our problem with the trial court's decision, as we've pointed out, is the trial court does none of those three things. In fact, it does just the opposite. You have, first, by essentially deleting the entire section of the declaration, paragraph three, which is the only section that really gives merit to what's happening in the subdivision. There's lots of things other than houses being built. And we believe paragraph three allows for that. Do you think paragraph, that deletion of paragraph three is, gave him the rationale for saying there was a blanket prohibition against any outbuildings? That's what the opinion appears to say. It appears to say we're going to eliminate paragraph three, therefore paragraph eight and one control in isolation, so you can't build a property and you can't build anything else. So that we believe is the first mistake. The second mistake was that the court, despite acknowledging ambiguity in his decision, ultimately said even though it's ambiguous, I'm not going to allow the unlimited legitimate use, such as an outbuilding which is permitted by the zoning ordinance. Instead, I'm going to preclude it. And then finally, and again, despite finding express ambiguity, the court said that the declaration was not particularly clear. The court said that it could easily be understood to have different and conflicting prohibitions, and yet it then goes ahead and enforces it against the Bosteds. So that's where we believe the court's decision failed at first, just in interpreting the declaration itself. Is any part of this declaration enforceable? I think the declaration is entirely enforceable in this respect. There's lots of things in there that can be done. They could reinstitute the association. They could do a better job of monitoring. Part of the problem here is when you see your ability to monitor those restrictions, like you do when you have an association. An association would send out an annual letter saying here's what you can and can't do. This group of homeowners, for whatever reason, voluntarily gave that up. So what they could have done was establish some other mechanism to make sure every homeowner was aware of these restrictions. Your Honor correctly points out they're on constructive notice. We all understand that. But when you're asserting the waiver defense like we are, or the laches defense, constructive knowledge doesn't preclude you from asserting those defenses, whereas actual knowledge will. So our position is there is a way to enforce these declarations. The way to do that is to constitute an association, a committee, a board of some kind, to at least going forward monitor these things. So you're acknowledging that the variance process has value, certainly. Which process has value? The variance process that has value. I think, of course, yeah. The architectural review process always has value. The architectural review committee is going to decide certain things are okay and certain things aren't. Maybe a certain size pool is fine and a certain size pool may not be fine. They've allowed, for instance, in the record, they allowed a pool house, which is virtually the same size as this garage, and evidently that's okay. I'm not sure why, but they've just decided that they like pool houses, but they don't like garages. Well, wasn't it the understanding of the plaintiffs that this garage was going to be used for storing of trucks and such? At one point, I believe they testified that they thought there was going to be a commercial vehicle stored in the garage. The testimony from the defendants was that there's, you know, my clients owned a towing company, which they don't, and they testified to that. He's a car guy. The hostess are car people, so they like cars. So they had no intention of storing any commercial vehicles. That's another point. There's commercial vehicles located throughout the subdivision, commercial vehicles, trailers, and other things that are also clearly not permitted. We're talking about structures, but to your point, is there anything that's enforceable? Sure. If you see a commercial vehicle, you need to send a letter. If you see a trailer that's violative of the declaration, somebody needs to send a letter. Unfortunately, we just don't have anybody to do that. But, all right, you send a letter, and it's easy to find a place for your trailer. It's easy to find a place for your commercial vehicle. And you can do that without maybe getting a court involved. But to send something after we've got foundation, footings foundation, roofing, siding half done, how does that work? It doesn't work very well. And I think the lesson learned in these cases is if you want to be able to enforce your covenants, you have to enforce your covenants. You have to do it either by way of an association or a committee, or you have to do it by way of vigilant monitoring of the subdivision, which is really difficult to do for most people who are working and doing normal things that we do and not driving around looking for violations. I understand my time is up. Yes. I think we all have an opportunity to respond. Thank you. All right. Mr. Meyer. Good morning, Your Honors. Good morning. Good morning, Mr. Griffin. I'm going to be appealing to the court. Jeffrey Meyer. I'm appearing today on behalf of the appellees. The appellees are Joe Aras, Larry Stanley, and Ronald Edelman. Your Honors, the appellants in this case raised five arguments on appeal. They first claimed that the trial court erred in interpreting the definition of the word to include a blanket prohibition for a detached garage. Secondly, that the trial court was required to but failed to balance the equities in the case. Third, that the trial court erred in its analysis of the affirmative defensive waiver. Fourth, that the trial court erred in applying the petty case when analyzing the defendant's affirmative defensive latches. And lastly, that the trial court erred in its analysis of the defendant's defensive unclean hands. The appellees believe that no such error exists, and we ask that you affirm the trial court's findings in order. Mr. Meyer, the trial court essentially said, I'm not going to consider number three. It doesn't make any sense. It's out of here. How in his authority to try to make the process whole and to read the document as a whole, does that work? You're referring, Your Honor, to the third provision in the declaration? Correct. What the trial court did there, Your Honor, was find impossibility in going to a nonexistent entity. The trial court didn't say that there's a blanket prohibition on constructing any buildings. It just said that you have to omit out of the declarations what is impossible to comply with. There's nothing to say that the – sorry, Your Honor. But that's the document. You can't rewrite that document. And impossibility doesn't really go to that issue. Doesn't impossibility go to actual performance? You know, it exists. This document exists as written. We are told as judges we may not rewrite the documents presented to us, and essentially that's what Judge Ackerman did. Judge, I'll agree that the court has to look at the document as a whole. I think to some degree, though, the issue of the existence or nonexistence of a design committee is a bit of a red herring. And I say that because two reasons. One, the complaint of the plaintiffs in this case was not that the Bostettes violated the covenants by failing to go to a design review committee. The complaint is that they constructed a building that is clearly and unequivocally prohibited by the plain language of the covenants even read as a whole. How do you get there? Who enforces it? Well, okay. This one's first. How do you get there? Why is it not a violation of this declaration? The construction of an outbuilding is expressly prohibited by paragraph... Why is it an outbuilding? Why isn't it in other structure as in paragraph 3? The court found, and I think correctly... I'm asking you for an interpretation here. We're here to decide whether the trial court got it right. I understand. My question is, how did you get to your assumption? That it's an outbuilding? We cite through the definition in Black's Law Dictionary, which includes clearly a garage as an outbuilding. We think that that... Is a garage also a structure? It is a structure, yes. Again, this would be ambiguous. My question to you is, why doesn't a garage fall under paragraph 3 as a structure? The declarations don't prohibit the construction of a garage. In fact, if you look at paragraph 1, the declarations very clearly say... It requires one, right? The attached garage, correct. And the home that has the six-car garage went through this variance process. Well, that was the testimony of the witness, correct? And the six-car garage issue, we indicated that we didn't believe that waiver applied because the plaintiffs testified they didn't believe they had a right to enforce anything in regards to the six-car garage. And this, I think, may be conflating two issues together. But if we were to accept the arguments of the post-its that there's some ambiguity here about garages, we would have to then completely discount the language in paragraph 8, which we can't do either. We have to give some meaning to the language in paragraph 8. The only way to harmonize, I think, paragraphs 1, 3, and 8 is to say, okay, clearly some things are permissible under the Covenants. Clearly, you can have a single-family residence. You can have an attached three- or four-car garage. Paragraph 3 even talks about some other things that, if there had been a design committee, could have been approved, pools, fences, swimming pools, or other structures. Nothing in here says, though, that you can construct a detached garage. So the only way to harmonize it all together is to come to the conclusion that some things clearly are listed and those must be in and could have been constructed, but some things are clearly out as well. But under the way this is written, they had an opportunity to go to a trustee and or a committee, present their plans, and seek approval. They would not have been able to seek approval for what they constructed. This is an important issue, Your Honor. If the court looks at, this is the Amico Realty case. Now, what was at issue in Amico Realty was the use of the property for business purposes. And there had been a process whereby the homeowner had gone, had presented a plan to that committee. The committee was clearly aware of the fact that this was going to be used for business purposes. And what the court found at the end of the day was, regardless of that, they had no authority. That wasn't what the design committee was for. The design committee was for architectural review, not to determine what uses could be permitted. The rule that comes out of the case is that a design review committee only has that authority which is permissible under the covenants themselves. And here, the covenants, I think three of them as a whole, clearly exclude the construction of a detached garage. That's an outbuilding that nowhere is otherwise alluded to as being permissible. So even if they had gone to a design review committee. If I assume your definition and assume that a garage is not a structure. Well, even if it's a structure, Your Honor, I think you have to harmonize, again, eight with the rest of it. I agree with the court on that point, or with Your Honor on that point. And that's something that I know Judge Ackman struggled with. It's something that I struggled with in making the argument to the trial court. But again, you have to harmonize it together. Clearly, you can't say that this document precludes the construction of any structure. It clearly permits some structures. But again, in terms of garages, it enumerates what type of garage can be constructed, so then it would exclude the others. I disagree with you. I mean, it says it shall have an attached three- or four-car garage. It does not say it shall not have any other garage. What it requires is a three- or four-car garage. Yes. Attached. Correct. Not to the exclusion of anything else. I mean, at this point, we're really parsing words. Well, Judge, looking at paragraph 8 and just looking at the plain language in it, and I don't want to— Right. I get it. They're absolutely in conflict. But looking at paragraph 8, Judge, just briefly, I don't want to go too far down the rabbit hole in the Oxford comma, but there is no Oxford comma. It's no outbuilding or other structure. I think that could be an inclusive or. Okay. So back to my question is, who's enforcing it? This is a contract. Declarations are a contract. I think it's the ZINOS, Z-I-N-O-S is the case we cite for that. Private contracts can be enforced by any party to the contract, regardless of whether or not there was an association. Even if there was an association, that would provide exclusivity. How are they in privity with the contract? For the Unit 4 declarations, they're in privity because they're homeowners. They're also subject to the terms of the contract. Now, we disagree with the court's finding that they're also parties to the Unit 3 declaration. That's part of the reason we don't believe that violations in Unit 3 are relevant to the court's consideration, because we're not a party to that contract, and we disagree with the trial court on that point. But they are clearly, as homeowners in Unit 4, parties to that contract. They have both the benefits and the burdens of the contract, and are entitled to enforce it, regardless of whether or not there may be another remedy or another avenue available to them, had there been an association. That wouldn't be to the exclusion of their right to seek a private action. Wasn't there plenty of testimony that there were other structures that did not get approval, and that nothing happened to those people? I mean, for instance, is it Greg Zecchi, who put up the big pool deck and the pergola or whatever, and nobody came to him, and then when Mr. Standy did come to him, he said, hey, you never said anything to me. And Mr. Standy said, well, between us, you know, I don't like this. How is it that he has the right to say what he likes and what he doesn't like? I believe that was – I'll butcher his name, Your Honor, if I try to pronounce it. Graziecchi. I believe that was Mr. Graziecchi's testimony. I think that testimony was conflicted. I don't think the court made a specific finding as to the veracity of that testimony. But even if there – Well, he was upset about whether he – he was upset about the lack of uniform application of this process, which, you know, as I indicated, there was plenty of testimony that there were other buildings and other structures built. I don't want to say buildings because I know the words are important. But other structures built, and there was no approval by any committee. There was nobody that came to them and said, hey, you can't have that on your property. They only came to this person. So who – that's my question. Who is monitoring this? Well, everyone has a right to, if they choose, bring a private right of action. The existence of other violations – and I don't want to conflate Units 3 and 4 too much because, again, our position is in Unit 3 they have no right to enforce their – they don't own property there. But even looking at Unit 3, if we want to include that, nowhere anywhere in Unit 3 or Unit 4 is there anything that is akin to what the Bosvets constructed. It is separate and distinct from every other purported violation of the covenants that's extended in either of those two units of the subdivision. Well, so is a pool house. Yes, and if they choose to – And there are pool houses there. If they – well, Mr. Graziecki testified it wasn't a pool house. His plan said otherwise. But there are no other structures that are – and the court's finding was there are no other structures that are akin to what the Bosvets are constructing. Since that's a factual distinction, Your Honors, and the appellate court requires that – prior appellate court opinions have held that that is only subject to being reviewed for being against the manifest way of the evidence. If the trial court finds that there's a separate and distinct character to other violations, I think that's something that this court has to be very deferential to. And that was the court's finding, that this garage is separate and distinct from any of the other violations. And it's well supported by the record here. There is nothing in the record to indicate that there is any other detached garage anywhere within Unit 3 or 4. There are pergolas and some gazebos and infamously – Garden railroads. Garden railroads. That's in Unit 3, which is actually pretty neat if you ever get to see it, Judge. And then infamously, there was a big deal made of this dollhouse. There was a document, a photograph in evidence, where there's an adult child standing next to the dollhouse showing that the structure is about as tall as I am. It's not a 20-foot tall two-car garage. It's a t-shirt. Yeah, exactly, a t-shirt. There's a very distinct difference between that and the structure issue in this case. Moreover, if the court looks at the appellate authority that we've cited, particularly the Vandevo case, V-A-N-D-E-L-O-G-T, there the court says proximity is also important. You may be more concerned about the existence of a violation of one particular covenant that's close to your property and not as concerned about others, and that doesn't preclude your rights, not waiver of your right to enforce against that violation for the adjoining property. That's the case here. Mr. Aras lives directly behind this. He can see the Volstead's garage from his patio. That's his testimony. That's something that these other structures, that's not the case. There's no evidence of that being the case. So there's clearly a different impact here on at least Mr. Aras. And Vandevo also holds that even if there are other violations, that doesn't per se preclude the ability to enforce against this particular one. You're not required to police every violation in your neighborhood. You can't choose. Your Honor, to your question, you can't choose which ones you enforce against. There's no waiver if there's some particular impact, and certainly for Mr. Aras that's the case. So the covenants that run with the land, do those run indefinitely? If they touch and concern the land, yes, Your Honor. I believe they run indefinitely once per court, unless there's some expiration. And there are covenants that exist that say, you know, these expire after 21 years or something like that. There's no such provision in the covenants at issue in this case. Your position is that even if the defendants here had submitted plans, this fictitious committee would not have been able to grant authority for it. That is correct. So would it be your position then that the variance provision in this declaration is of no benefit to the parties? Well, are you speaking specifically about paragraph 3, Your Honor? No. Taking the document in its whole, it creates an opportunity for variance. So would it be your position that that is of no benefit? No, I wouldn't take that position. I disagree with the characterization of it as a variance. I think it's enumerating specifically what the design review committee would have authority to approve, notwithstanding the other provisions. Well, let me call it this. Let me call it an approval provision. Yes. No, I don't think there's any benefit. I think if we were here today asking this court to affirm the enjoyment of a construction of a pool that hadn't received a design committee's approval, I think we'd have a very difficult case. That's not what we're doing, though. This is not any of the things that are listed as being subject to design review approval. So you're not submitting that everybody that is going to build something must submit plans. Is that what you're saying? That is our position. It's a legal impossibility.  Because you have people who build homes and never submitted plans. Correct. And they wouldn't be able to. Why? There is no committee in place. There is no trustee. There is no trustee successor. I don't even know if the homeowner is. I see that my time has expired. Let me finish your answer. Thank you. I don't think that even if you can't go to a committee that doesn't exist. But that's not what we're complaining of. We're not saying that the Bostetts here have failed because they didn't go to a design committee. We're saying that there's a structure they've constructed that, even looking at the document as a whole, couldn't have been approved by the design committee. What makes this a prohibited building? The doors? Well, several things. Again, looking at 1, 2, and 8 as a whole, it faces the front of the property. It's an outbuilding. And they now have on their property up to, I think they have a four-car on the side, so up to six vehicles, which would exceed what's permissible under Paragraph 1. So it violates all those provisions. It doesn't say you can't go beyond. It says you have to have at least. Right. It doesn't say you can't go beyond. I mean, as I read this, you could have 20 garage bays if they were attached to the house. It just, you have to have at least three or four. It doesn't say at least 200. It says shall have an attached three- or four-car garage. So it's specifically enumerating that it's three- or four-car, not that that's a minimum. You couldn't have two, and you couldn't have more than four. Well, I'm not sure that somebody won't be here soon on that issue. There's a possibility, I suppose. I may have briefly concluded. Yes. For the foregoing reasons, the trial court's findings, the 12-1-2017 judgment and 3-29-2018 order denying the defendant's motion to reconsider should all be affirmed. Thank you very much for your time. Thank you. Mr. Griffin. Thank you. If I could, there's a couple of points I want to hit and tie them into some of the cases that we've cited. The first is, the neighbor's name is actually Grasaday, I've learned over the last couple of years. And, you know, the testimony regarding the conversation that this is between us, I think ties in well with the antical realty case because that case said, while it may not have been the Design Review Committee's job to determine whether a business should be present, that case also dealt with stone-like poles that the defendant had constructed. And the question there was, is that a structure? The court looked at the definition of structure, just like the trial court did here, and said, yeah, it's a structure. The term structure is pretty broad. And they said that when the ARC decided to not approve them, that they were exercising well-reasoned judgments rather than arbitrary ones. And I think what we have here, because we lack any body other than the County of Kane to look at these items, we're seeing these things enforced, if at all, based on arbitrary whims and multiple interpretations by just about every homeowner, or at least three of them on what they like and what they don't like. That's not well-reasoned judgments. Those are arbitrary whims. And I think Amico speaks to that point. The second point is that when we talk about an absolute prohibition on everything else, which is how plaintiffs are viewing even Paragraph 1, to say you can only have this and nothing else, we believe it says you can have this and anything else that you want, if you read Paragraphs 3 and 8 in conjunction, you have to ask for permission. And you look at the Westfield v. Herrick case that we've cited, and although the language and the comments are not exactly the same, what that court said is that you can't have an absolute prohibition. That's unreasonable. In that case, it was a pool. In this case, it's a structure or an outbuilding. Westfield says you have to have a reasonable interpretation of that provision, and so you can't absolutely prohibit a pool. You have to exercise well-reasoned judgment and decide what size, shape, above-ground, below-ground pool you can have. And we think the same should be true with every other structure that's otherwise prohibited without the approval process. And in this case, by default, clients built a garage that satisfied King County's requirements. The garage matches the house. It's got the same siding. It's got the same shingles. It's got the same ornamental piece up front, and they did everything they could to be reasonable within the confines of what they were provided. Well, what, I mean, practically, what's the difference between a building, an outbuilding, and a garage? I don't believe there's a difference under this document. I mean, if we were in farm territory, outbuildings usually mean barns or chicken coops or something of that nature. That's certainly not what this is. I don't think you can reasonably draw a distinction between those terms. I think an outbuilding is a structure. I think the trial court found that. I think that's accurate. I don't think you can make a difference between a garage being a structure and a pool house or whatever they want to call it is not a structure. I think they're both structures, clearly. If a stone-like post is a structure in the Amigo Realty case, so is a garage, so is a pool house, so is a gazebo, so is a train set. They're all structures. They're all conditionally prohibited under this document but with a process to get it done. Is the availability of that process a benefit to all the homeowners? I believe it is. I believe it is. In paragraph 2, what's an improvement? I have to catch you off guard, but any improvements to be constructed are subject to the approval of the trustee or committee. Right, so that's another one. I left that out, but initially paragraph 2 talks about garage doors not facing the front and chimneys must be masonry. We've got several examples, by the way, of those happening as well other than this house. I think it means the same thing that paragraph 3 means. It says if you're going to do improvements, really any improvements, including the expressly permitted ones in paragraph 1, you're not supposed to build a house, even a house with an attached garage and a driveway, without seeking approval. And so I think paragraph 2 is just another, maybe an artfully, maybe somewhat ambiguous, but it's saying you have to do this and when you do it, you have to get approval, if that makes sense. All right. Counselor had mentioned the proximity argument, and I know you don't have this in front of you, but I just wanted to point out, if I could, exhibit one of the trial exhibits shows that the pool house, which I think is the most similar in terms of what's been done, is literally one lot over from Plaintiff Harris. He's directly behind Mike Price, who's supposed to be one lot over from the pool house, and that's plainly visible as well. So thank you for your time today. All right. Counsel, thank you for your arguments this morning and to this afternoon. We will render a decision in due course, and at this point, we are going to stay adjourned for today.